# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| MARTIN J. COBB, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-CV-63 NAB |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner of Operations , | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Martin J. Cobb, II's application for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 416, 423 *et seq.* Cobb alleged disability due to depression, anxiety, bipolar disorder, schizoaffective disorder, osteoarthritis, herniated discs, slipped vertebrae in back, scoliosis, stage 3 chronic kidney failure, pain, fatigue, auditory and visual hallucinations, and paranoia. (Tr. 214.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 9.]

Cobb presents one error for review in this appeal. He asserts that the administrative law judge (ALJ) erred by failing to give controlling weight to the opinions of three treating providers and one independent medical evaluator. The Commissioner contends that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed. The Court has reviewed the parties' briefs and the entire administrative record, including the hearing

transcripts and the medical evidence. For the reasons set forth below, the Court will affirm the Commissioner's final decision.

## Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)A), 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant

satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 726 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

### ALJ Decision

The ALJ found that Cobb had the severe impairments of schizoaffective disorder, depressed type; major depressive disorder; borderline personality disorder; schizophrenia; and anxiety. (Tr. 12.) The ALJ determined that Cobb did not have any severe physical impairments. The ALJ found that Cobb had the residual functional capacity to perform medium work with the following limitations: (1) simple, repetitive tasks not at a fast pace, (2) occasional interaction

with coworkers and the public, (3) limited to isolated work with only occasional supervision, and (4) limited to work which requires only occasional changes in work tasks. (Tr. 14.) The ALJ gave little or only partial weight to the medical source statements from Dr. Arvin Abueg and Advanced Nurse Practitioner Carolyn Greening, a Psychological Evaluation from licensed psychologist Rebecca Still, and a letter authored by licensed clinical social worker Marilyn Sue Frankenbach and Advanced Nurse Practitioner Carolyn Greening. Cobb asserts that the statements from these providers should be given controlling weight. The Court will now evaluate each opinion separately.

## Analysis of Medical Opinion Evidence

### Dr. Arvin Abueg

On April 1, 2014, Cobb was admitted to the hospital for a suicide attempt where he took an overdose of his prescription medications. (Tr. 276-317, 344-48, 357-65.) He was in the intensive care unit for several days and then spent almost a week in the psychiatric unit of the hospital. (Tr. 276-317, 344-48, 357-65.) After his discharge from the hospital, Cobb established care with Dr. Arvin Abueg for primary care. The administrative record shows Cobb visited with Dr. Abueg three times in April and May of 2014. During the first visit, Cobb's primary complaint was blurred vision in both eyes. (Tr. 319-21.) During that visit his mental status examination was normal. His second visit occurred on May 5, 2014 and Cobb complained of anxiety and shaky hands. (Tr. 322.) During his third visit on May 28, 2014, Cobb came for a physical examination and the completion of his disability paperwork. (Tr. 329-31.)

Dr. Abueg's notes from the May 28th visit indicate that Cobb's mental status examination was generally normal, but his mood and affect were anxious. (Tr. 330.) Cobb's physical examination results were also normal. (Tr. 330-31.) The medical source statement

4

completed by Dr. Abueg opined about Cobb's mental and physical impairments. (Tr. 333-335.) Dr. Abueg opined that Cobb could occasionally lift no more than 10 pounds and stand, walk, and sit for a maximum of less than 2 hours in an 8 hour work day. (Tr. 333.) He also indicated that Cobb could only sit or stand for 10 minutes before he needed to change positions and he needed the opportunity to shift at will. (Tr. 333.) Dr. Abueg indicated that Cobb must also walk around 16 times in an eight hour work day for 15 minutes at a time. (Tr. 333.) Dr. Abueg did not state what medical findings supported those limitations. (Tr. 333.) Next, Dr. Abueg gave various postural and manipulative limitations, but again, Dr. Abueg did not reference any medical findings supporting those limitations, only indicating that "patient can do the above activities satisfactorily for a period of time." (Tr. 334.) Dr. Abueg also listed environmental restrictions indicating that Cobb needed to avoid moderate exposure to extreme heat, cold, and high humidity. (Tr. 335.) He wrote "Patient has problems on following instructions, especially for repetitive jobs since he cannot stay on task long enough to do the task as prescribed for prolonged periods." (Tr. 335.) Dr. Abueg opined that this was due to Cobb's "bipolar disorder type 2 & schizoaffective disorder." (Tr. 335.) He also opined that Cobb's impairments would cause Cobb to be absent from work for more than 4 days per month, to be off task more than 25% of the time, and he needed to take unscheduled breaks every 15-20 minutes for 20 minutes. (Tr. 336.)

The ALJ gave Dr. Abueg's medical source statement little weight regarding Cobb's physical limitations. (Tr. 16.) The ALJ found that Dr. Abueg did not explain why Cobb would have such severe physical limitations. The ALJ noted that Dr. Abueg's notes from Cobb's May 28th visit state, "He has difficulty holding a full time job not because he is physically unable to

handle it but because he does not have the mental focus to actually finish his work due to his mania and psychosis." (Tr. 16, 329.)

Regarding Dr. Abueg's evaluation of Cobb's mental impairments, the ALJ gave partial weight to the evaluation. (Tr. 16.) The ALJ stated that there was not strong evidence that Cobb's mental symptoms were "so significant as to preclude work" and "medical notes do not contain much in the way of evidence to support his conclusion that mania is a significant problem." (Tr. 16.) He also found that "Dr. Abueg's own notes of the examination on the date that he provide[d] his opinion show a history of anxiety and irritability, but also showed anxious but appropriate insight, appropriate judgment regarding everyday activities, and appropriate judgment in social situations." (Tr. 16.)

Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite her impairments and her physical or mental restrictions." 20 C.F.R. §§ 404.1527, 416.927(a)(2)[1]. All medical opinions, whether by treating or consultative examiners are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other

---

[1] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. §§ 404.1527, 416.927, the court will use the regulations in effect at the time that this claim was filed.

factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404, 1527(c)(2), 416.927(c)(2). "Good reasons for assigning lesser weight to the opinion of a treating source exist where the treating physician's opinions themselves are inconsistent or where other medical assessments are supported by better or more thorough evidence." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (internal citations omitted).

Based on the foregoing, the Court finds that the ALJ properly weighed the medical opinion evidence from Dr. Abueg. First, while Dr. Abueg was a treating physician, his three visits with Cobb are not enough time to develop a longitudinal picture of a claimant's medical impairments. *See e.g. Randolph v. Barnhart,* 386 F.3d 835, 840 (8th Cir. 2004) (three visits insufficient to formulate an opinion of claimant's ability to function in the workplace). Dr. Abueg did not treat Cobb for any period during employment and the treatment notes did not show that he based his opinion about Cobb's ability to work on anything other than Cobb's subjective complaints. Second, Dr. Abueg's opinion on Cobb's physical impairments were inconsistent with the treatment notes from Cobb's visits and Dr. Abueg failed to identify any medical findings to support his opinion. The opinion's conclusions regarding physical impairments was also internally inconsistent by stating that Cobb could stand and walk for less

than 2 hours total a day, but then stating that he needed to walk around 16 times in an 8 hour day for fifteen minutes at a time.

Next, the ALJ properly gave partial weight to Dr. Abueg's opinion regarding Cobb's mental impairments. (Tr. 16.) Again, Dr. Abueg treated Cobb three times within two months after he had been released from the hospital for a suicide attempt. At the time of his treatment, Cobb was relatively stable and was only exhibiting symptoms of anxiety despite not being on antipsychotic medication. Further, treatment notes from the psychiatric nurse practitioner Carolyn Greening during the same time period indicated that Cobb's condition, while initially unstable, was improving and that he was exhibiting moderate symptoms of impairment. (Tr. 381-88.) Therefore, the Court finds that the ALJ's weighing of Dr. Abueg's opinion is supported by substantial evidence in the record as a whole.

**Rebecca Still, Licensed Psychologist**

At the requests of Cobb's former counselor, Rebecca Still, a licensed psychologist conducted a psychological evaluation of Cobb on May 14, 2014. (Tr. 392-401.) This evaluation occurred approximately a month and a half after Cobb's April 2014 suicide attempt. The psychological evaluation included assessments for attentional problems (ADHD Rating Scale), cognitive functioning (Kaufman Brief Intelligence Test-2nd edition and Wide Range Achievement Test), the Minnesota Multiphasic Personality Inventory-2nd Edition (MMPI-2), the Millon Clinical Multiaxial Inventory, Beck Depression Inventory, Culture-Free Self-Esteem Inventories- 2nd Edition, Multidimensional Anxiety Questionnaire, and Substance Abuse Subtle Screening Inventory.

The results of the ADHD Rating Scale indicated that his answers were inconsistent and may be invalid. (Tr. 394.) The intelligence and achievement testing showed that Cobb had

average intellectual functioning and no specific learning disorder was revealed. (Tr. 394-95.) The MMPI-2 validity scales suggested that Cobb may have overstated problems, which Still opined "may be due to an overly self-critical tendency or an effort to let others know of his need of assistance. There is a possibility that the profile lacks accuracy due to exaggeration or psychopathology." (Tr. 395.) The profile suggested he felt troubled by anxiety, depression, and general distress. (Tr. 395.) There was a very high score in the area of work interference, suggesting behaviors or attitudes that may interfere with work performance. (Tr. 396.)

The Millon Clinical Multiaxial Inventory showed strong indications of an anxiety condition and a depressive condition. (Tr. 397.) Cobb scored in the "mild" depression range on the Beck Depression Inventory. (Tr. 398.) The Culture-Free Self-Esteem Inventories test revealed low self-esteem. (Tr. 398.) The Multidimensional Anxiety Questionnaire reveals severe clinical anxiety. (Tr. 399.) The Substance Abuse Subtle Screening Inventory classified Cobb as "non dependent."

Still diagnosed Cobb with schizoaffective disorder, bipolar type, generalized anxiety disorder, panic disorder, and avoidant personality disorder. (Tr. 400.) She assessed his global assessment functioning as 40 (Tr. 400), which indicated some impairment in reality testing or communication or major impairment in several areas. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) ("DSM-IV-TR"). The GAF scale is "a numeric scale used to rate social, occupational, and psychological functioning on a hypothetical continuum of mental-health illness." *Mabry v. Colvin*, 815 F.3d 386, 391 n. 6 (8th Cir. 2016) (citing *Pates-Fire v. Astrue*, 564 F.3d 935, 937 n.1 (8th Cir. 2001)). "The scale ranges from zero to one hundred." *Id.* A GAF score is a "subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *Jones v. Astrue*, 619 F.3d 963, 973

(8th Cir. 2010). "The most recent edition of the Diagnostic and Statistical Manual of Mental Disorders discontinued use of the GAF scale." *Id.* Even before the DSM-V discontinued use of the GAF scores, the Commissioner declined to fully endorse GAF scores for use in social security and SSI disability programs. *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010). "GAF scores may be relevant to a determination of disability based on mental impairments. But an ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." *Mabry*, 815 F.3d at 391. GAF scores have no direct correlation to the severity standard used by the Commissioner. *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (citing 65 Fed. Reg. 50746, 50764-65). Nevertheless, the Social Security Administration has stated that GAF scores are considered opinion evidence, even though they should not be viewed as case determinative. CAROLYN A. KUBITSCHEK & JON C. DUBIN, SOCIAL SECURITY DISABILITY LAW & PROCEDURE IN FEDERAL COURT, § 5:30, ed. (February 2017 Update) (citing Administrative Message 13066 (July 22, 2013)).

Still recommended that Cobbs receive regular visits with his doctors for medication and treatment, counseling, and involvement with Vocational Rehabilitation to help him in developing goals and a plan for meeting those goals. (Tr. 400-401.) The ALJ did not state what weight, if any, that he gave to Still's psychological evaluation. The ALJ's entire consideration of Still's evaluation is below:

> Rebecca Still, M. A., a licensed psychologist, performed a Psychological Evaluation of the claimant on May 14, 2014, at the request of the claimant's counselor. Testing indicated that the MMPI validity scales suggest "some possibility that he may have overstated [his] problems." Ms. Still noted there is a possibility that the profile lacks accuracy due to exaggeration of psychopathology (Ex. B8F/5). Depression testing was in the "mild" range (Ex. B8F/8) but with severe anxiety (Ex. B8F/9). Ms. Still's recommendations indicated the claimant could improve his situation with medication

> adjustment and compliance, along with therapy. Although Ms. Still assigned a GAF score of 40, as noted, she indicated testing was likely invalid to some degree due to claimant's symptom exaggeration.

(Tr. 15.) The ALJ did not label Still's entire evaluation as "inaccurate," he selectively highlighted Still's comments regarding the MMPI-2, where she stated Cobb "may have overstated problems" and "profile may lack accuracy due to exaggeration of psychopathology." The Commissioner contends that the ALJ could discount Still's conclusions based on her own questions about the testing results.

"A single evaluation by a nontreating psychologist is generally not entitled to controlling weight." *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011). "The ALJ is not required to accept every opinion given by a consultative examiner, however, but must weigh all the evidence in the record." *Mabry*, 815 F.3d at 391. Based on the Court's review, the ALJ only explicitly discounted Still's opinion about the GAF score. The ALJ could discount the GAF score due to Still's comments about exaggeration and possibility of overstated problems that would call into question the accuracy of the MMPI-2 profile. Therefore, the ALJ did not err in discounting whether the GAF score was accurate based on Still's own questioning of the results of two of the tests.

**Other Opinion Evidence**

Next the Court will address the ALJ's weighing of the medical source statements and letter provided by Cobb's nurse practitioner Carolyn Greening and licensed clinical social worker Marilyn Frankenbach.

> Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources.* It then divides *other sources* into two groups: *medical sources* and *non-medical sources. Acceptable medical sources* include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. According to Social

11

> Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources,

*Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations omitted). Medical sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists." 20 C.F.R. § 416.913(d). "Information from these other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose." SSR 06-03P, 2006 WL 2329939. Further, these other sources are not entitled to controlling weight. *LaCroix v. Barnhart*, 465 F.3d 881, 885-86 (8th Cir. 2006).

"[I]nformation from such other sources, [however], may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. *Id.*; 20 C.F.R. §§ 404.1513(d), 416.913(d). "Evidence provided by 'other sources' must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the evidence in the record." *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015); *see also Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (in determining what weight to give to other evidence, the ALJ has more discretion and is permitted to consider any inconsistencies found within the record). Therefore, the ALJ is required to consider Cobb's providers' opinions in evaluating his impairments.

**Carolyn Greening, Advanced Nurse Practitioner**

Advanced Nurse Practitioner Carolyn Greening treated Cobb for several years. (Tr. 373-90, 406-483.) The treatment time period included in the administrative record is from March

2014 to September 2015. Greening diagnosed Cobb with chronic schizoaffective disorder, bipolar disorder, anxiety, and chronic insomnia. Cobb's mental status examinations with Greening indicated generally normal examinations, except for anxious or depressed mood and affect. Greening opined that Cobb had GAF scores between 63-68 during most of his visits. A GAF score between 61 and 70 indicates mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, and has some meaningful interpersonal relationships. DSM-IV-TR at 34. There were a few times when she assessed that he had serious limitations in social and assessed his score between 50 and 60. On the GAF scale, a score from 51 to 60 represents moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers). DSM-IV-TR at 32-34.

Greening completed two medical source statements (Mental) and co-authored a letter with Marilyn Frankenbach regarding Cobb's mental impairments. (Tr. 325-27, 478-79, 481-83.) The first medical source statement was completed on May 22, 2014, one month after his April 2014 suicide attempt. (Tr. 325-27.) In that statement, Greening indicated that Cobb had extreme and marked limitations[2] in every area listed, except for interacting appropriately with the public. (Tr. 325-26) She indicated that he would be absent from work more than four days per month, he would be off task 25% or more of the time, and would need unscheduled work breaks every hour for ½ to 1 hour in length due to mood swings and anger. (Tr. 326-27.) She stated that his recent hospital records from Blessing Hospital supported her assessment. (Tr. 326.) The ALJ

---

[2] The medical source statement defines marked limitation as "There is a serious limitation in this area. There is substantial loss in the ability to effectively function. An assessment of Marked means the impairment will interfere with the individual's ability to perform work-related activities thirty to fifty percent of the time." (Tr. 325.) Extreme limitation is defined as "major limitation in this area. There is no useful ability to function in this area. An assessment of Extreme means the impairment will interfere with the individual's ability to perform work related activities more than fifty percent of the time." (Tr. 325.)

gave little weight to this assessment because it "referred to the time period immediately following the claimant's suicide attempt." (Tr. 15-16.) The ALJ also noted that his treatment records show that his condition improved after hospitalization. (Tr. 16.)

The Court finds that the ALJ did not err in giving little weight to Greening's May 22, 2014 medical source statement (mental). The ALJ could discount the opinion, because it was during the time period immediately following his suicide attempt and there is no evidence that he maintained that same level of functioning during the treatment period. Further, during Cobb's visit on May 20, 2014, his mental status examination findings were normal, except for a depressed mood. (Tr. 381-82.) Greening also wrote that the depression was "improving" and his anxiety and insomnia were stable. (Tr. 382.) She assessed a GAF score of 63 indicating mild impairment. The ALJ did not err in assigning little weight to this opinion based on the record as a whole.

Greening's November 2015 medical source statement mental assessed similar, but slightly less severe limitations for Cobb. (Tr. 481-83.) In November 2015, she found that he only had moderate limitations in understanding, remembering, carrying out, and making simple work related decisions. (Tr. 481.) She opined that he had extreme limitations in understanding, remembering, carrying out, and making complex work related decisions. (Tr. 481.) Greening indicated that Cobb had marked limitations in interacting appropriately with the public and extreme limitations in interacting appropriately with supervisors, co-workers, and responding appropriately to usual work situations and changes in a routine work setting. (Tr. 481-82.) She again opined that he would be absent from work more than four days per month and he would be off task 25% or more of the time. (Tr. 482.) In this assessment, Greening opined that Cobb

would need unscheduled work breaks every hour for 15 to 20 minutes[3] in length due to panic attacks and anxiety. (Tr. 483.) Unlike the May 2014 opinion where she states Cobb's disability began May 1, 2009, she wrote that the disability began August 14, 2012. (Tr. 327, 483.)

The ALJ also gave this opinion little weight, because "treatment notes pertaining to visits with Ms. Greening show the claimant denied suicidal ideation, had relatively normal mental status examinations, had GAF scores in the range of mild symptoms, and had greatly improved with medication increases." (Tr. 17.) The ALJ's assessment of the Greening's medical source statement and treatment notes is consistent with the record before the Court. The ALJ can always take into consideration that the claimant has improved with medication and other treatment. The Court finds that the ALJ did not err in assigning little weight to this opinion.

### Marilyn Frankenbach, Licensed Clinical Social Worker

Licensed clinical social worker Marilyn Frankenbach provided counseling for Cobb beginning in January 2015. (Tr. 413-15, 422-438, 450-56.) Frankenbach diagnosed Cobb with schizoaffective disorder and panic disorder without agoraphobia. She provided counseling for him, which included his father at times. Her treatment notes indicated that he was stable and doing well. She gave him GAF scores primarily of 68, with the exclusion of the first visit. On August 25, 2018, she and Greening authored a letter supporting Cobb's claim for disability benefits. (Tr. 478-79.) Frankenbach and Greening's joint letter noted Cobb's suicide attempts over several years and that he is chronically mentally ill. (Tr. 478.) The letter focuses on Cobb's progress in a structured setting. The letter states:

> He is considered seriously mentally ill, though at the present time he is maintaining in his current structured environment. … He has made some progress with learning to use better coping skills, but nevertheless, it is this therapist's opinion

---

[3] The Court assumes that Greening meant minutes not hours.

> that he is always going to struggle in outside, less structured
> settings than the one he is currently in.

(Tr. 478.)

The ALJ gave little weight to the letter, due to Cobb's "possible overstatement of symptoms" and "recent treatment notes showing the claimant's symptoms had improved significantly with counseling and medication adjustment." (Tr. 17.) In this case, Cobb's treatment notes with Frankenbach and Greening indicate a great improvement from the time of Cobb's suicide attempt in April 2014. There is also evidence to support the providers' conclusions that Cobb is doing well, because he is in a structured environment living on the farm with his parents and children. The ALJ did not err in considering that objective medical testing had shown that there may have been some exaggeration of symptoms and that Cobb overall was doing very well through medication management and counseling. Because there is substantial evidence to support the Commissioner's finding regarding this opinion letter, the Court must affirm the Commissioner's finding. *Masterson v.*, 363 F.3d at 726 (if, after viewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed).

## Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only enough that a reasonable person would find it adequate to support the decision, and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court cannot reverse

merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently. *Id.* Substantial evidence supports the Commissioner's final decision.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Doc. 1, 14.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

Dated this 31st day of August, 2018.

                                                                  /s/ Nannette A. Baker
                                                                  NANNETTE A. BAKER
                                                                  UNITED STATES MAGISTRATE JUDGE